IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DAVID MOYA

     Plaintiff,

v.

SSC GREELEY CENTENNIAL OPERATING COMPANY, LLC, a Delaware
Limited Liability Company; and SAVASENIORCARE ADMINISTRATIVE
SERVICES, LLC, a Delaware Limited Liability Company.

     Defendants.

---

## COMPLAINT, JURY DEMAND AND CERTIFICATE OF REVIEW

---

COMES NOW the Plaintiff, David Moya and for his Complaint, Jury Demand and Certificate of Review against Defendants SSC GREELEY CENTENNIAL OPERATING COMPANY, LLC, a Delaware Limited Liability Company; and SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC, a Delaware Limited Liability Company, states and avers as follows:

## I.   PARTIES AND VENUE

1.  Plaintiff David Moya is a natural person residing at Grace Healthcare of Glenwood Springs, 2305 Blake Avenue, Glenwood Springs, Colorado 81601-4325, telephone (970) 945-5476.  Plaintiff is a citizen of the State of Colorado.

2. Defendant SSC Greeley Centennial Operating Company, LLC is the license holder of Centennial Health Care Center ("Centennial"), a skilled nursing facility located in Weld County, Colorado. Defendant SSC Greeley Centennial Operating Company, LLC is a Delaware Limited Liability Company. Defendant SSC Greeley Centennial Operating Company's prinicipal office is at One Ravinia Drive, Suite 1500, Atlanta, Georgia.

3. Defendant SSC Greeley Centennial Operating Company, LLC is wholly owned by Leonard Grunstein, a resident of New Jersey, and Murray Forman, a resident of New York, through several tiers of interrelated Delaware limited liability companies, none of which are citizens of the State of Colorado. Defendant SSC Greeley Centennial Operating Company, LLC is not a citizen of Colorado for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4. Defendant SavaSeniorCare Administrative Services, LLC is a Delaware Limited Liability Company. Defendant SavaSeniorCare Administrative Services, LLC's prinicipal office is at One Ravinia Drive, Atlanta, Georgia.

5. Defendant SavaSeniorCare Administrative Services, LLC is wholly owned by Leonard Grunstein, a resident of New Jersey, and Murray Forman, a resident of New York, through several tiers of interrelated Delaware limited liability companies, none of which are citizens of the State of Colorado. Defendant

SavaSeniorCare Administrative Services, LLC is not a citizen of Colorado for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

6. Defendant SavaSeniorCare Administrative Services, LLC at all times relevant provided management, supervisory and oversight services for Centennial. These services included the provision of human resources; creation and approval of Centennial's staffing and operations budget; provision of Centennial's governing body; direct supervision of Centennial's administrator; creation and enforcement of Centennial's nursing policies and procedures; supervision of Centennial's compliance with all State and Federal regulatory requirements; and provision of the responses to regulatory deficiencies cited by State and Federal authorities. Defendant SavaSeniorCare Administrative Services, LLC provided all management and operational support for Centennial at times relevant to this Complaint.

7. The District of Colorado has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is a complete diversity of citizenship between the Plaintiff and both Defendants and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in the District of Colorado because the acts and omissions giving rise to the claims set forth herein occurred within Colorado.

## II.   FACTUAL BACKGROUND

9.  Plaintiff was admitted to Centennial on July 18, 2008.

10. Plaintiff's admitting diagnoses included quadraplegia and neurogenic bowel and bladder.

11. These diagnoses were all secondary to a serious motor vehicle accident that Plaintiff suffered prior to his admission to Centennial.

12. Defendants were aware of Plaintiff's diagnoses at the time of his admission to Centennial and were also aware of the requirement that Centennial have the staffing, resources and expertise necessary to provide appropriate care to Plaintiff, who has heavy care needs and who is medically complex.

13. At the time of his admission to Centennial, Plaintiff had no behavioral problems and was noted to be cooperative with his care.

14. At the time of admission, Plaintiff did not have any pressure sores. However, due to his quadraplegia, lack of mobility and similar issues, Plaintiff was at high risk for developing pressure sores.

15. Shortly after his admission to Centennial, Plaintiff was dropped.  He fell on his coccyx, causing a bruise.

16. Defendants failed to reasonably care for the bruise, which turned into a pressure sore.

17.By September, 2008, Plaintiff's pressure sore had become a large, tunneling stage IV pressure sore with significant drainage.

18.In July, 2009, Plaintiff was noted to have developed yet another pressure sore on his bottom.

19.In August, 2009, Plaintiff was noted to have developed a pressure sore on his right buttock.

20.On or about November 10, 2009, Plaintiff was noted to have developed a large pressure sore on his right gluteal fold.

21.Also on November 10, 2009, Plaintiff was noted to have developed a pressure sore on his left toe.  On that same date, he was was noted to have developed a pressure sore on his right great toe.  On November 10, 2009, Plaintiff was also noted to have developed a large pressure sore on his left heel.

22.On December 10, 2009, Plaintiff was was noted to have developed a pressure sore on his lower left gluteus.

23.On February 19, 2010, Plaintiff was noted to have developed a pressure sore on his right buttock.

24.By February, 2011, Plaintiff's multiple sores were life-threatening.

25.Here is how Plaintiff's sores appeared as of that time:



26. Plaintiff underwent multiple surgeries in February, 2011, in order to repair these multiple sores.

27. All of these pressure sores were caused by Defendants' gross failure to provide Plaintiff with reasonable pressure sore prevention and treatment, including frequent repositioning, skin treatments, wound pressure relief and appropriate pressure relieving surfaces.

28. Outrageously, Defendants blamed Plaintiff for causing his own pressure wounds.  The Centennial chart is replete with retaliatory charting falsely stating that Plaintiff inappropriately refused wound care services.

29. Centennial staff also routinely retaliated against Plaintiff for complaining about the care.

30. In particular, Plaintiff was taught during his post-accident treatment at Craig Hospital that he should complain about care issues when he deemed it appropriate or necessary to do so and to refuse treatment from providers that he believed were unsafe or untrained to care for him or treat him properly.

31. On numerous occassions while at Centennial, Plaintiff was approached by staff with whom he was not familiar.  When Plaintiff made inquiries to these new and unfamiliar staff members, the staff members would often retaliate against him and chart that he was uncooperative or had refused care and treatment.

32. On numerous other occassions, Plaintiff was approached by staff members who he observed as not having washed their hands and/or who were not wearing gloves.  Knowing that he had pressure sores during much of his stay at Centennial, and knowing that he was susceptible to infection and perhaps even death from infection, Plaintiff resfused treatment from staff members who he observed were not using proper infection control practices.

33. When he complained to staff or refused to be treated by staffers who he believed were not using proper infection control practices, staff retaliated against Plaintiff by refusing to wash their hands, refusing to put on gloves and/or by refusing to provide the required treatment.  Staff would then falsely document in Plaintiff's chart that Plaintiff inappropriately refused care or treatment.

34. Thus, as a direct result of Defendants' failure to provide adequately trained staff and/or staff who used proper and required infection control practices, Plaintiff was denied numerous wound treatments, resulting in the further deterioration in his pressure wounds.

35. As a further result of this conduct, Plaintiff was labeled by Centennial as a rude patient, as a complainer, and as someone who was non-compliant with his treatment.  This in turn resulted in a vicious cycle in which Plaintiff was denied all opportunities at lodging grievances or complaining about legitimate care issues because to do so would result in further retaliation.  Because Plaintiff was and is vulnerable and completely dependent upon his caregivers, Defendants' pattern, practice and system of retaliation against Plaintiff resulted in Plaintiff becoming frightened, despondent, angry, suicidal and hopeless.

36. Because of Defendants' pattern, practice and system of retaliating against Plaintiff for lodging care complaints or grievances, Plaintiff was denied access to

his statutorily mandated system of grievances and protection from retaliation as provided under 42 C.F.R. § 483.10, 42 U.S.C. § 1396r(c)(1)(A) and 6 C.C.R. § 1011-1, Ch. V, Part 12.

37. Defendants' retaliatory actions also resulted in a deprivation of psychosocial services and a homelike environment, both of which are required under State and Federal regulations.

38. During Plaintiff's stay at Centennial, Centennial was cited with numerous care deficiencies by the Colorado Department of Public Health and Environment, "CDPHE."

39. Those deficiencies included, *inter alia*:

    a.  Repeated citations for failing to listen to Residents' grievances;

    b.  Repeated citatations for poor pressure sore care and prevention;

    c.  Repeated citations for failure to properly plan residents' care; and

    d.  A citation for failure to follow professional standards.

40. Defendant SSC Greeley Centennial Operating Company, LLC also unlawfully failed to have conforming insurance or approved alternative security at all times relevant to this Complaint.

41. Upon information and belief, Defendant SavaSeniorCare, LLC conspired with Defendant SSC Greeley Centennial Operating Company, LLC to cause

Centennial to be operated without conforming insurance or approved alternative security.

42. As a result of Defendants' failures as set forth herein, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including increased medical and hospital bills, surgical bills, rehabilitation and therapy bills, pain and suffering, upset, emotional distress, embarrassment and other losses to be proved to a jury at trial.

### III.  FIRST CLAIM FOR RELIEF: NEGLIGENCE

#### A. Joint and Several Claims Against All Defendants

43. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

44. Defendants' care and treatment of Plaintiff was below accepted standards and also violated regulations governing the operation of skilled nursing facilities.

45. Defendants' operation and management of Centennial is and was a joint venture between the Defendants.

46. Although Defendant SSC Greeley Centennial Operating Company, LLC is the license holder of Centennial, all management and operations were provided by Defendant SavaSeniorCare Administrative Services, LLC.

47. Defendants SavaSeniorCare Administrative Services, LLC also provided the policies and procedures that Centennial staff were required to follow and also provided supervisory oversight over the conformance with these policies and procedures.

48. Defendants' acts and omissions were thus undertaken jointly and severally and in such a way that it is virtually impossible to separate out the negligent acts and omissions of each individual Defendant.

49. Defendants' corporate structure is so intertwined and intermingled that in previous lawsuits against these entities, Defendants themselves have been unable to determine who is employed by what entity and what individual services are supplied by each such entity.

50. Defendants jointly, severally and collectively owed Plaintiff the following duties:

    a. A duty to properly assess and evaluate Centennial's ability to meet Plaintiff's particularized needs, including the needs associated with his quadraplegia;

    b. A duty to provide sufficiently trained staff, sufficient staff and sufficient resources to meet Plaintiff's particularized needs, including the needs associated with his quadriplegia;

c. A duty to discharge Plaintiff and/or find alternative placement for Plaintiff in the event Centennial was no longer able to meet his particularized needs, including the needs associated with quadriplegia and skin breakdown;

d. A duty to provide Plaintiff with reasonable and appropriate psychosocial services;

e. A duty to provide Plaintiff with reasonable and appropriate pressure sore prevention, care and treatment;

f. A duty to provide Plaintiff with a homelike environment and an appropriate psychosocial environment;

g. A duty to provide Plaintiff with appropriate infection control;

h. A duty to provide reasonable and appropriate care planning;

i. A duty to cure and resolve deficient care practices cited by the CDPHE;

j. A duty to provide a method for handling Plaintiff's complaints and grievances without fear of reprisal or retaliation; and

k. A duty to provide Plaintiff care without fear of reprisal or retaliation.

51. Defendants, jointly, severally and collectively breached the above duties owed to Plaintiff by engaging in the acts and omissions described in detail above and by:

    a. Admitting Plaintiff to Centennial knowing that Centennial was not staffed, trained, equipped or resourced to meet Plaintiff's particularized needs, including his quadriplegia;

    b. Failing to provide Plaintiff with adequately trained staff or staff adequate to meet his particularized needs;

    c. Failing to follow standards and regulations governing the prevention, care and treatment of pressure sores;

    d. Failing to take steps appropriate for the prevention, care and treatment of Plaintiff's pressure sores;

    e. Failing to follow Defendants' own policies and procedures;

    f. Failing to provide Plaintiff with reasonable psychosocial care and an environment that met his psychosocial needs;

    g. Failure to discharge Plaintiff from Centennial when it became apparent that Centennial could not meet his particularized needs;

    h. Negligent readmission of Plaintiff following discharge to the hospital;

    i. Failure to adequately coordinate and plan Plaintiff's care needs;

    j.  Failing to cure and resolve deficiencies cited by the CDPHE, resulting in several repeat deficiencies for the same issues;

    k.  Retaliating against Plaintiff for expressing grievances or complaints about his care;

    l.  Failure to follow statutes and regulations concerning care grievances; and

    m. Failure to follow statutes and regulations concerning Plaintiff's rights as a nursing home resident and his rights to make grievances without fear of retaliation.

52. As a result of these negligent acts and omissions as described above, Plaintiff has suffered and continues to suffer economic and non-economic damages, including increased medical and hospital bills, surgical bills, rehabilitation and therapy bills, pain and suffering, upset, emotional distress, embarrassment and other losses to be proved to a jury at trial.

### B. Negligence Claim Particular to Defendant SSC Greeley Centennial Operating Company, LLC

53. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

54. Defendant SSC Greeley Centennial Operating Company, LLC owed particular duties to Plaintiff, including:

a. A duty to operate Centennial autonomously;

b. A duty to provide staffing, staff training and resources to Plaintiff sufficient to meet his individual and particularized needs, regardless of the requirements and pressures exerted by Centennial's owners;

c. A duty to provide an independent, autonomous governing body, which itself was required to meet regularly, keep notes and consider the needs and grievances of Centennial's residents, including Plaintiff; and

d. A duty to employ a functioning governing body to supervise and oversee all aspects of care at Centennial, including the quality of care provided to Plaintiff.

55. Defendant SSC Greeley Centennial Operating Company, LLC, breached these duties owed to Plaintiff by engaging in the acts and omissions described above and by:

a. Failing to have an autonomous governing body, as required by relevant regulations governing the operation of skilled nursing facilities, including 42 C.F.R. § 483.75 and 6 CCR 1011-1, Ch. V, Part 1.

b. Failing to have a governing body that met regularly, kept notes and responded to the needs and grievances of Centennial's residents, including Plaintiff;

    c. Failing to provide adequately trained staff or sufficient staff to meet Plaintiff's needs on an individualized and particularized basis, as required under State and Federal regulations as well as the standard of care for skilled nursing facilities; and

    d. Failing to operate Centennial as an autonomous facility, instead utilizing Centennial as a puppet facility controlled, managed and operated exclusively by the several tiers of companies that owned Centennial.

56. As a result of these negligent acts and omissions, Plaintiff was deprived of reasonable and appropriate care, staffing and an avenue for his care grievances. This in turn caused him to suffer the injuries, damages and losses described above, including economic and non-economic damages, increase in medical and hospital bills, surgical bills, rehabilitation and therapy bills, pain and suffering, upset, emotional distress, embarrassment and other losses to be proved to a jury at trial.

### C. Negligence Claim Particular to Defendants SavaSeniorCare Administrative Services, LLC

57. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

58. As described above, Defendants SavaSeniorCare Administrative Services, LLC managed, controlled, supervised and operated all aspects of Centennial's operations, including the quality and quantity of care provided to Plaintiff.

59. Defendants SavaSeniorCare Administrative Services, LLC at various times employed Centennial's regional vice president or director of operations.  This individual was, at times relevant, a member of Centennial's governing body, such that it existed, and was the person with final authority over Centennial's staffing, staff training and operations budget.  This individual was also charged with ensuring that Centennial complied with State and Federal regulations governing the operation of skilled nursing facilities as well as the nursing policies and procedures in effect at Centennial during times relevant.

60. Defendants SavaSeniorCare Administrative Services, LLC thus owed Plaintiff the following duties:

 a.  A duty to provide reasonable and appropriate oversight over Centennial;

 b.  A duty to ensure that Centennial provided Plaintiff with sufficient staff, sufficiently trained staff and a staffing model based upon Centennial's census and resident acuity;

    c.   Reasonable and appropriate autonomy over Centennial's operations and governing body, as required under 42 C.F.R. § 483.75 and 6 C.C.R. § 1011-1, Ch. V, Part 1; and

    d.   Reasonable and appropriate autonomy to Centennial's administrator.

61. Defendants SavaSeniorCare Administrative Services, LLC breached these duties owed to Plaintiff by engaging in the acts and omissions described above and by:

    a.  Failing to operate Centennial as an autonomous skilled nursing facility;

    b.  Failing and depriving Centennial of adequate staff, adequately trained staff and sufficient staff to meet Plaintiff's particularized needs;

    c.  Failing to provide Centennial with support adequate to cure its repeat, serious care deficiencies as cited by the CDPHE; and

    d.  Failing to allow Centennial to have a legitimate, operative governing body with regular meetings, and one that kept notes and responded to the grievances made by Centennial's residents, including Plaintiff;

    e.  Causing Centennial to operate illegally, without insurance, as described below.

62. As a result of these negligent acts and omissions, Plaintiff was deprived of reasonable and appropriate care, staffing and an avenue for his care grievances.

This, in turn, caused him to suffer the injuries, damages and losses described above, including economic and non-economic damages, increase in medical and hospital bills, surgical bills, rehabilitation and therapy bills, pain and suffering, upset, emotional distress, embarrassment and other losses to be proved to a jury at trial.

## IV.   SECOND CLAIM FOR RELIEF:
## EXTREME AND OUTRAGEOUS CONDUCT
### (against Defendant SSC Greeley Centennial Operating Company only)

63. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

64. Defendant SSC Greeley Centennial Operating Company, LLC, by and through its employees and management personnel, engaged in extreme and outrageous conduct toward Plaintiff.

65. Defendant ratified, tolerated or encouraged the extreme and outrageous conduct of its individual staff members and caregivers.

66. This extreme and outrageous conduct includes the acts and omissions described with particularity above, as well as:

a. Physical and emotional retaliation against Plaintiff for lodging or attempting to lodge reasonable grievances and care complaints;

b. Withholding important treatment from Plaintiff as a result of Plaintiff's requirement that staff members wash their hands, don gloves or use reasonable infection control practices;

c. Withholding important treatments and services for Plaintiff when Plaintiff questioned the training or ability of a staff member to safely or competently perform that treatment;

d. Conditioning Plaintiff's safety, care and treatment upon Plaintiff's acquiesence to Centennial staff's unwillingness to engage in safe treatment practices;

e. By falsely charting Plaintiff's refusal to acquiesce to Defendants' unsafe care practices as repeated acts of non-compliance and care refusal; and

f. By creating a viscious circle in which Plaintiff was made to feel frightened and unsafe by his caregivers' unsafe practices while also being prevented from utilizing required grievance procedures without fear of retaliation or reprisal.

67. Defendant knew that Plaintiff was particularly susceptible to extreme and severe emotional distress as a result of the physical vulnerability caused by his quadriplegia.

68. Defendant intentionally and/or recklessly caused Plaintiff to suffer extreme emotional distress through the acts and omissions described above.

69. As a result of the extreme emotional distress caused by Defendant's intentional and/or reckless acts, Plaintiff is entitled to damages in an amount to be determined by the jury at trial.

## V. THIRD CLAIM FOR RELIEF:  REQUEST FOR DECLARATORY JUDGMENT PURSUANT TO  FED. R. CIV. PROC. 57
### (As against Defendant SSC Greeley Centennial Operating Company, LLC)

70. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

71. C.R.S. § 13-64-301 and 3 C.C.R. § 702-2 require all nursing homes in Colorado to maintain financial responsibility as a condition of licensure and as a *quid pro quo* for caps on damages under C.R.S. § 13-64-302.

72. Financial responsibility, for the purposes of these laws, requires the maintenance of dollar-one insurance or approval of alternative security by the Colorado Division of Insurance.

73. Defendant SSC Greeley Centennial Operating Company, LLC, did not have conforming insurance or approved alternative security at any time relevant to this Complaint.

74. Upon information and belief, Defendant SavaSeniorCare, LLC conspired with Defendant SSC Greeley Centennial Operating Company, LLC to cause Centennial to be operated without conforming insurance or approved alternative security.

75. Plaintiff seeks a declaration from the Court, pursuant to Fed. R. Civ. Proc. 57 and 28 U.S.C. § 2201, that Defendant SSC Greeley Centennial Operating Company, LLC's failure to obtain and maintain financial responsibility consistent with C.R.S. § 13-64-301 and 3 C.C.R. § 702-2 deprives it of the damages cap protection provided by C.R.S. § 13-64-302.

## VI.  CERTIFICATE OF REVIEW

Undersigned counsel hereby certifies that a relevant expert has reviewed this matter and that said expert has reviewed all facts, records and materials deemed relevant by said expert.  Based upon this review, the expert has determined that Plaintiff's claims are not frivolous, groundless or lacking in substantial merit within the meaning of C.R.S. § 13-17-102(4).

Said expert's review satisfies the requirements of C.R.S. § 13-20-602.

## VII.  PRAYER FOR RELIEF

WHEREFORE for the reasons set forth herein, Plaintiff prays that this Honorable Court enter judgment in his favor and against Defendants as set forth above and award Plaintiff the following relief:

    a.  Non-economic loss;

    b.  Economic loss;

    c.  Attorney's fees;

    d.  Pre and post judgment interest;

    e.  Court costs and filing fees; and

    f.  Declaratory relief.

### PLAINTIFF REQUESTS TRIAL TO A JURY

Respectfully submitted this 11th day of November, 2011.

LAW OFFICES OF J.M. REINAN, P.C.

/s/ Jerome Reinan

_____

Jerome Reinan, #22031
Jordan Griff Gingrass, #38195
1437 High Street
Denver, CO 80218-2608
(303) 894-0383
(303) 894-0384 FAX
*Attorneys for the Plaintiff*

Plaintiff's address:

> David Moya
> Grace Healthcare of Glenwood Springs
> 2305 Blake Avenue
> Glenwood Springs, CO 81601-4325